IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| PAUL BRUNNER, | ) | CV 10-24-M-DWM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| RICHARD "RICK" BAWCOM, d/b/a | ) | |
| KATY CLASSIC CARS, KCCR, INC. and | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  Introduction

Plaintiff Paul Brunner (Plaintiff) brought action in this Court seeking
damages for alleged defects in connection with a 1969 ZL-1 powered Camaro he
purchased from Defendant(s).  The Defendants, Richard Bawcom (Bawcom) and
KCCR, Inc. (KCCR) move to dismiss the amended complaint on the following
grounds: (1) lack of personal jurisdiction; (2) improper venue; (3) Bawcom is not
a real party in interest; and (4) statute of limitations for the claims of fraud,

constructive fraud, violation of the Montana Consumer Protection Act, and

conversion.  For the reasons that follow, the Defendants' motions are denied.

## II.  Factual Background

Plaintiff contacted Bawcom via e-mail in the spring of 2007 because he was

interested a 1969 Chevrolet Camaro ZL1 clone[1] Bawcom had advertised on eBay.

Pl.'s Am. Compl.¶10.  Brunner was traveling in New Zealand but informed

Bawcom he lived in Montana and any vehicle he purchased would be delivered

there.  Id. ¶12.  Bawcom informed Plaintiff the car he was interested in had been

sold, but that he could restore a similar vehicle for Plaintiff to his own

specifications.  Id. ¶17.  Relying on Bawcom's representations, Plaintiff

commissioned a Camaro clone, like the one Bawcom sold on e-bay for $90,000.

Id. ¶20.  After negotiating additional options, the final price of the Camaro was

$92,729.  Id.

The invoice for the Camaro is dated March 27, 2007.  (See dkt #14-2).  It is

labeled "Katy Classic Cars & Restorations" and is signed "Thanks, Rick

Bawcom."  It specified Plaintiff was to pay for the Camaro in three installments.

Pl. Am. Compl. ¶22.  In an email also dated March 27, 2010, Bawcom gave

---

[1] In the classic car market, a "clone" is a close replica of the original vehicle built with authentic, but restored parts.  Pl.'s Am. Compl. ¶15.  Bawcom asserts there was never any discussion of the term "clone" or that the car would be a ZL-1 clone.  Aff. Bawcom ¶6.

instructions to wire the payments to an account named KCCR, Inc. and provided a mailing address for KCCR.   (Dkt #28-2 at 2).   Bawcom claims it is a corporate account of KCCR.   Aff. Bawcom ¶6.   Plaintiff claims the entity KCCR, Inc. was never explained to him in any discussions with Bawcom.   The  Plaintiff made the first two payments to the account naming Bawcom as the beneficiary and the third was made naming KCCR as beneficiary, at Bawcom's request.   (See dkt #28-3).

It is disputed where the Camaro was delivered and possessed.   Bawcom claims delivery and possession was accepted by Plaintiff in Texas in June 2007. Aff. Bawcom ¶12.   However, Plaintiff took actual possession in October 2007, when the Camaro was delivered in Montana.   Pl. Am. Compl. ¶23.   Bawcom arranged for the Camaro to be shipped to Montana at the expense of the Plaintiff and insured the Camaro through its delivery to Montana.   (Dkt #38 at 3-5).

Upon taking possession of the Camaro, Plaintiff did not drive it extensively and stored it for the winter.    Pl. Am. Compl. ¶27.   When Plaintiff drove the Camaro in the spring of 2008, he claims he experienced numerous paint, body and mechanical defects.   Id. ¶28.   Plaintiff kept in contact with Bawcom regarding the defects.   Id. ¶29.   Bawcom provided Plaintiff with instruction, direction, and at times paid for necessary repairs and arranged for replacement parts to be shipped to Montana.   Id.   In June 2008, defects caused Plaintiff to bring the car to Blue

Ribbon Auto in Missoula, Montana, for repair.   Id. ¶30.   After inspection, he was

informed by Blue Ribbon mechanics that the Camaro could have been built for

much less than $92,729.   Id.   This prompted Plaintiff to arrange for Jerry

MacNeish, a Camaro expert, to come to Montana and inspect the car.   Id. ¶31.

MacNeish was not able to do so until October of 2009.   Upon receipt of

MacNeish's inspection report, Plaintiff learned the Camaro was not the same or

materially similar to that advertised and represented by Bawcom.   Id. ¶¶ 32-34;

(see dkt #14-6 (MacNeish Report)).   MacNeish appraised the Camaro's value at

$55,000 to $65,000.   Id.   On January 15, 2010, Plaintiff unsuccessfully attempted

to revoke acceptance of the Camaro.   Id. ¶36; (dkt #14-7).

On March 18, 2010, Plaintiff filed his initial complaint in this Court.   On

April 16, 2010, Bawcom reactivated KCCR, Inc., a Texas Corporation which

previously had its corporate privileges revoked.   Decl. Jon Wallace ¶30(e) (May

14, 2010).   On the same day, Bawcom filed two certificates of assumed business

names for the corporation: "Katy Classic Cars" and "Katy Classic Cars &

Restorations."   Id. ¶3(f).   Prior to these filings there was no record of these names

being registered with the Texas Secretary of State.   Id.   Then on April 19, 2010

Bawcom filed a complaint in the United States District Court for the Southern

District of Texas in KCCR, Inc.'s name seeking declaratory judgment that it

performed its agreement with Plaintiff.   Aff. Bawcom ¶15; (see dkt #28-5).

On April 29, 2010, Bawcom moved to dismiss Plaintiff's complaint in this Court.   On May 17, 2010, Plaintiff filed a verified amended complaint.   On June 18, 2010, Defendants' moved to dismiss the amended complaint claiming: (1) lack of personal jurisdiction; (2) improper venue; (3) Bawcom is not a real party in interest; and (4) statute of limitations.   Bawcom's motion to dismiss the original complaint is denied as moot.   This order will address Defendants' motion to dismiss the amended complaint.

Bawcom claims that KCCR is the party with whom Plaintiff contracted with to purchase the Camaro.   Aff. Bawcom ¶3.   He asserts his only involvement was as an officer or agent of KCCR.   Id.   Bawcom claims that neither he nor KCCR have ever conducted business in Montana, have no dealers in Montana, are not licensed or registered to do business in Montana, have no offices or employees in Montana, and do not conduct any advertising in Montana.   Id. ¶9.

### III.  Analysis

### 1.     Personal Jurisdiction Exists over Bawcom in Montana.

A party seeking to invoke the jurisdiction of the federal courts has the burden of establishing the existence of such jurisdiction.   Data Disc, Inc. v. Sys. Tech Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).   In establishing personal

jurisdiction, Plaintiff need only make a prima facie showing that personal jurisdiction exists.   Id. at 1285.   In assessing whether a plaintiff has met its burden, the uncontroverted allegations of the complaint are taken as true.   Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2002). Ambiguities in the affidavits submitted by the parties are construed in the light most favorable to the plaintiff and any conflicts are resolved in plaintiff's favor. Id.   Allegations in a pleading which are contradicted by affidavit, however, are not taken as true.   Data Disc, 557 F.2d at 1284.

Personal jurisdiction exists over a nonresident defendant if the exercise of jurisdiction satisfies the requirements of the applicable state long-arm statute and comports with federal due process.   Dow Chem. Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005).

### A.    Montana's Long-Arm Statute - Mont. R. Civ. P. 4B(1)

Montana's long-arm statute provides for both general and specific jurisdiction.   Mont. R. Civ. P. 4B(1).   Plaintiff makes no suggestion that Montana has general jurisdiction over Bawcom.

Specific jurisdiction exists when the plaintiff's cause of action arises from the defendant's activities in the forum.   Simmons Oil Corp. v. Holly Corp., 796 P.2d 189, 194 (Mont. 1990).  Specifically, the defendant is subject to jurisdiction

if the plaintiff's claims arise from any of the following acts of the defendant:

> (a) the transaction of any business within this state;
> (b) the commission of any act which results in accrual within this state of a tort action;
> (c) the ownership, use or possession of any property, or of any interest therein, situated within the state;
> (d) . . .
> (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; . . .
> (f) . . .

Mont. R. Civ. P. 4B(1)(a)-(f).

Plaintiff claims Mont. R. Civ. P. 4B(1)(a), (b) and (e) confer jurisdiction over Bawcom.   Rule 4B(1)(a) does not confer specific jurisdiction as Bawcom does not appear to have transacted business within Montana.   Plaintiff contacted Bawcom in Texas in connection with the purchase of the Camaro which was restored in Texas.

Mont. R. Civ. P.  4B(1)(b) confers jurisdiction if a defendant's act results in the accrual of a tort action in this state.   For the purposes of long-arm jurisdiction, a tort accrues when and where the damages occur.   Scanlan v. Norman Projektil Fabrik, 345 F. Supp. 292, 293 (D. Mont. 1972).   "Under Montana law, the act causing the injury...need not occur in Montana as long as the tort accrues here. Jackson v. Kroll, Pomerantz and Camaron, 223 Mont. 161, 166 (1986).  Plaintiff alleges the tort accrued after he took possession of the Camaro in Montana.

Bawcom argues the Camaro was delivered to and possessed by Plaintiff in Texas because he shipped the car FOB Houston, TX, so no tort accrued in Montana[2]. Bawcom Aff. ¶¶6-8.   However, Bawcom offers no proof the car was shipped FOB Houston, TX.   (Dkt #38 at 3).   The agreement was for the Camaro to be delivered in Montana and that is where Plaintiff took possession.   Additionally, conflicts between Bawcom's affidavit and Plaintiff's verified amended complaint must be resolved in Plaintiff's favor.   Menken, 503 f.3d at 1056.   Rule 4B(1)(b) confers jurisdiction over Bawcom because Plaintiff claims he was damaged in Montana.

Mont. R. Civ. P. 4B(1)(e) confers jurisdiction over any defendant that "enters into a contract... for materials to be furnished in this state by such person." Plaintiff claims he contracted with Bawcom for the Camaro to be furnished in Montana.   Again, Bawcom argues the Camaro was delivered in Texas and no materials were furnished in Montana.   However, Bawcom knew the Camaro would be shipped to Montana.   Aff. Bawcom ¶10.   Rule 4B(1)(e) confers jurisdiction over Bawcom because he entered into a contract for a car to be furnished in Montana.

---

[2]It is uncertain whether defendants can defeat jurisdiction on such grounds. See  Byron Nelson Corp. v. Orchard Management Corp., 975 P.2d 555, 558-59, (Court of Appeals of Washington held Virginia seller shipping goods to Washington could not defeat long-arm jurisdiction on due process grounds through technical expedient of shipping FOB Virginia).

**B.      Federal Due Process**

Due process requires that a defendant have minimum contacts with the

forum "such that maintenance of the suit does not offend traditional notions of fair

play and substantial justice." Int. Shoe Co. v. Washington, 326 U.S. 310, 316

(1945).  Whether a court may exercise jurisdiction over a non-resident defendant

without offending notions of fair play and substantial justice  is determined using

a three-part test:

> (1) The non-resident defendant must do some act or consummate some
> transaction with the forum by which he purposefully avails himself of the
> privilege of conducting activities in the forum.
>
> (2) The claim must be one which arises out of or results from the
> defendant's forum related activities.
>
> (3) Exercise of jurisdiction must be reasonable.

Data Disc., 557 F.2d at 1287.

A plaintiff need not satisfy all three elements to establish jurisdiction.  If the

defendant has purposely availed itself of the privilege of conducting activities in

Montana and the claim arises out of the forum related activities, a presumption of

reasonableness arises, which a defendant can overcome only by presenting a

compelling case that jurisdiction would be unreasonable.   Burger King Corp. v.

Rudewicz, 471 U.S. 462, 477 (1985).

9

1.  Bawcom purposefully availed himself of the Privileges of Doing
Business in Montana.

To satisfy the purposeful act requirement, a defendant must have

purposefully directed its activities into the forum state.   Hanson v. Denckla, 357

U.S. 235, 253 (1958).  This requirement protects against a nonresident being

hauled into court solely over random or fortuitous contacts over which the

defendant had no control.   Burger King Corp., 471 U.S. at 476.   Provided a

"substantial connection" with the forum exists, even a single act may support

limited personal jurisdiction over a nonresident.   McGee v. International Life Ins.

Co., 355 U.S. 220, 223 (1957).

Plaintiff alleges Bawcom purposefully availed himself of the privileges of

conducting activities in Montana because extensive negotiations and

communications occurred between the parties over the building of the car,

Bawcom made arrangements to ship the vehicle to Montana at Plaintiff's expense,

and Bawcom undertook continuing commitments to advise, instruct, and even pay

for various repairs and parts it had shipped for the vehicle.   Pl. Am. Compl. at

¶¶20-29.

Bawcom argues personal jurisdiction cannot arise out of a single eBay

transaction, citing Boschetto v. Hansing, 539 F.3d 1011 (9th Cir. 2008), for

support.   However, Boschetto is distinguishable from this case.  In Boschetto, the plaintiff won an auction on eBay for a vehicle owned by defendant in Wisconsin and then made all the arrangements to ship it to California.  The court described the transaction as a "one-shot affair" that did not create any ongoing obligations for the defendant.   Id. at 1017.   Here, after failing to win Bawcom's eBay auction, Plaintiff and Bawcom entered into extensive negotiations to restore the Camaro to Plaintiff's specifications.   Bawcom arranged to ship the Camaro to Montana, insured it, and continued to assist Plaintiff with problems with the Camaro after its delivery.   Although the only contact established between Bawcom and the forum is that with Plaintiff, the contact created ongoing obligations with Plaintiff in Montana.   Therefore, a "substantial connection" with the forum was created by which Bawcom purposely availed himself of the privilege of conducting business in Montana.   See McGee, 355 U.S. at 223; Boschetto, 539 F.3d at 1017.

2.  Plaintiff's Claim Arises out of Belgrade's Forum-Related Activities.

The Ninth Circuit follows a "but for" test in determining whether a claim arises out of the forum-related activities.  Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995).  The question here is: but for Bawcom's contacts with Montana, would Plaintiff's claims have arisen.  Unless the Court allows jurisdictional

discovery followed by a jurisdictional hearing, Plaintiff need only make a prima

facie showing that his claim arises out of the forum-related activities.   Id. at 1498.

    Bawcom's act of building the Camaro for Plaintiff in Montana and insuring

and then shipping the Camaro to Montana appears to establish a prima facie case

for jurisdiction under the "but for" test.   Plaintiff claims the Camaro was not built

as represented and he has suffered damages as a result.   Id.   Plaintiff has a prima

facie showing that "but for" Bawcom's contacts with Montana, his claims would

not have arisen.   Ballard, 65 F.3d at 1500.

    3.  Exercise of Jurisdiction over Belgrade is Reasonable.

    The exercise of jurisdiction by the Court must be reasonable and "comport

with fair play and substantial justice." Burger King Corp., 471 U.S. at 477-78.   If

the plaintiff has established the first two factors, the burden is on the defendant to

present a "compelling case that the exercise of jurisdiction would not be

reasonable." Menkem v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007).   In

determining reasonableness, courts must consider the following factors:

    (1) The extent of defendant's purposeful interjection;
    (2) The burden on defendant in defending in the forum;
    (3) The extent of conflict with the sovereignty of the defendant's state;
    (4) The forum state's interest in adjudicating the dispute
    (5) The most efficient judicial resolution of the controversy;
    (6) The importance of the forum to the plaintiff's interest in convenient and
    effective relief; and

(7) The existence of an alternative forum

Core-Vent Corp. v. Nobel Ind. AB, 11 F.3d 1482, 1486-87 (9th Cir. 1993).   No

one factor is dispositive, rather the court must balance all seven.   Id. at 1488.

Weighing the factors it appears personal jurisdiction is reasonable in this

case:

(1) Bawcom's "purposeful interjection" of restoring the Camaro for Plaintiff

in Montana is directly related to the cause of action.

 (2) Requiring Bawcom to defend its product in Montana would impose a

burden.   However, for a violation of due process, a defendant must establish that

defending in the forum would place it at a severe disadvantage in comparison to

the plaintiff.   Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990).   Bawcom has

not made this case on the information provided here.

(3) There is a conflict with the sovereignty of Texas as Texas has an interest

in the rights of its citizens and in regulating businesses incorporated within it.

(4) Montana has an interest in adjudicating this dispute.   See Burger King

Corp., 471 U.S. at 473. (noting a state generally has a manifest interest in

providing its residents with a convenient forum for redressing injuries inflicted by

out of state actors)

(5) It is arguable whether Montana or Texas is the more efficient

13

jurisdiction in this matter.   Plaintiff resides in Montana, the alleged injury accrued in Montana, and there are witnesses in Montana.   On the other hand, Bawcom resides in Texas, the Camaro was built and  restored in Texas, and Bawcom names eight possible witnesses who worked on the vehicle in Texas.   Neither party has the upper hand on this factor.

(6) There is substantial importance regarding Plaintiff's interest in convenient and effective relief of having Montana as the forum because Plaintiff and certain witnesses reside in Montana.   Excessive costs would be imposed on the Plaintiff if required to bring this case elsewhere.   Id.   Plaintiff's choice of forum must be recognized for its import under the circumstances here.

(7) An alternative forum exists in Texas.   As discussed, Texas has not been shown to be the more efficient forum so the balance favors Plaintiff's choice.

Bawcom argues that the exercise of jurisdiction would be unreasonable because it has not conducted any activity in  Montana.   Def.'s Br. at 10-11. However, Bawcom has conducted activity in Montana.   He fails to present a "compelling case that the exercise of jurisdiction would not be reasonable." Menkem, 503 F.3d at 1057.  Jurisdiction over Bawcom is reasonable.

**2.     Venue is proper in the District of Montana and should not be transferred to the District of Southern Texas.**

Bawcom claims that in the alternative that he is subject to personal jurisdiction in this Court, Montana is an improper venue for this action.

**A.     Venue is proper in Montana under 28 U.S.C. § 1391(a).**

By virtue of Federal Rule of Civil Procedure 12(b)(3), a party may challenge a complaint for improper venue by way of motion.  Because this is a diversity action, venue must be determined under 28 U.S.C. § 1391(a). If the Court determines venue is not proper in Montana, 28 U.S.C. § 1406(a) requires that the court dismiss the action or transfer it to an appropriate court.  A district court's venue ruling is reviewed de novo.  <u>Immigrant Assistance Project v. INS</u>, 306 F.3d 842, 868 (9th Cir. 2002).

Bawcom claims venue is improper in Montana under 28 U.S.C. § 1391(a). Therefore, he argues the case should be transferred to the District of Southern Texas.  Section 1391(a) states:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may except as otherwise provided by law, be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

the property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Here, section 1391(a)(1) could apply but Plaintiff filed in Montana. Bawcom argues section 1391(a)(2) does not apply because none of the alleged events or omissions that gave rise to Plaintiff's claims occurred in Montana. However, section 1391(a)(2) provides for proper venue where the property that is the subject of the action is located.  This includes tangible personal property such as a vehicle.  Group A. Autosports, Inc. v. Holtzberg, 2008 WL 4382661, p. 3 (C.D. Cal. Sept. 2, 2008).  The Camaro that is the subject of this litigation is located and stored in Montana.  Therefore, venue is proper in Montana under 28 U.S.C. § 1391(a)(2).  Likewise 28 U.S.C. § 1391(a)(3) applies because Bawcom is subject to personal jurisdiction in Montana.

**B.    Venue should not be transferred under 28 U.S.C. § 1404(a).**

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.  28 U.S.C. § 1404(a).  The determination of whether to transfer is addressed on a case-by-case basis.  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000).  The moving party bears the burden of proof  to

show why the forum should be changed.  Anderson v. Thompson, 634 F. Supp. 1201, 1204 (D. Mont. 1986).  The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of Forum.  Decker Coal v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).  When a discretionary venue transfer would only shift the inconvenience from defendant to plaintiff, the motion to transfer should be denied.  Anderson, 634 F. Supp. at 1204. A district court's decision to transfer or dismiss an action on the ground of improper venue pursuant to section 1404(a) is reviewed for an abuse of discretion. Jones,  211 F.3d at 498.

 In Anderson, 634 F. Supp. 1201, this Court examined the following factors to consider in a change of venue under section 1404(a):

> (1) plaintiff's choice of forum,
> (2) plaintiff's residence,
> (3) respective court's familiarity with applicable law,
> (4) availability of compulsory process,
> (5) convenience of witnesses,
> (6) nature, materiality and essentiality of testimony to be elicited from witnesses who must be transported,
> (7) ability to join additional parties, and
> (8) length of time action has already been pending in the transferor forum.

 Anderson, 634 F. Supp. at 1204.

 Applying these factors to the instant case, Bawcom does not make such a strong showing of inconvenience to upset Plaintiff's choice of forum.

(1) "A plaintiff's choice of forum should rarely be disturbed." <u>Anderson</u>, 634 F. Supp. at 1204.  Plaintiff's choice of forum favors against transfer.

(2) Plaintiff's Residence favors against transfer.

(3) The application of Montana substantive law in this case  favors against transfer.

(4), (5), (6) The availability and convenience of witnesses is an important factor in determining the propriety of a discretionary transfer.  <u>See</u> <u>Anderson</u>, 634 F. Supp. at 1206:

> "A moving party's inability to utilize compulsory process to compel the attendance of unwilling witnesses is a factor which weighs in favor of transfer.  The Pragmatic inquiry the court must make with regard to this factor is whether testimony by deposition would be adequate.  That consideration in turn, calls for an assessment of the nature and materiality of those unwilling witnesses falling outside the subpoena power of the transferor forum.  If a significant amount of crucial evidence must be given by deposition if the case is not transferred, transfer would be appropriate."

 <u>Anderson</u>, 634 F. Supp. at 1206.

The court should focus more on the materiality and importance of the anticipated witnesses than the number of witnesses each side has and the location of each.  <u>See</u> <u>Gates Learjet Corp. v. Jensen</u>, 743 F.2d 1325, 1335-36 (9th Cir. 1984).  "The mere fact that a party wishes to call witnesses who reside in a transferee district is not sufficient to warrant transfer, unless the party makes a

sufficient showing that the witnesses...will be severely inconvenienced if litigation

proceeds in the transferor forum." Anderson, 634 F. Supp. at 1207.

Bawcom argues the case should be transferred to the District of Southern

Texas because eight potential witnesses who worked on the Camaro reside in

Texas (the other resides in California).  (See dkt #30 at 7-8).  He argues these are

the only witnesses that have knowledge as to the restoration of the Camaro.

Bawcom expects these witnesses to testify as to the nature and the quality of the

work and materials supplied and the condition of the Camaro when it was

completed.   Plaintiff counters that these proposed witnesses are not critical to this

lawsuit because none of the subcontractors used by Bawcom knew of the

representations Bawcom made to Plaintiff during the transaction.  Plaintiff does

not suggest the subcontractors did not perform the work as they agreed with

Bawcom[3].  Plaintiff further argues that witnesses from Blue Ribbon Auto reside in

Montana and have knowledge of the condition of the Camaro.  (Dkt #15 at 18).

Plaintiff also suggests that neither forum is more convenient for witnesses outside

both forums such as Jerry MacNeish in Maryland.  Id.

Although Bawcom has named more potential witnesses, he has not shown

---

[3]Plaintiff further suggests that if these witnesses are needed, the advent of real-time video and the ease of securing subpoenas in other federal districts make factors four (4) and six (6) not compelling in favor of transfer.  (Dkt #15 at 18).

the importance of these witnesses or whether their testimony by video or deposition would be inadequate. He has not shown a severe inconvenience to these witnesses necessary to merit a transfer of forum, especially in light of the inconvenience which would face Plaintiff's witnesses if transfer was granted. Factors four (4), five (5) and six (6) do not appear to weigh in favor of transfer.

(7) The ability to join additional parties appears to be a non-factor as Bawcom has made no assertion he intends to join additional parties.

(8) This case has not been pending long in this forum and does not preclude transfer to Texas.

Taking these factors into consideration, Bawcom has not made a strong showing of inconvenience required to warrant "upsetting the Plaintiff's choice of forum." Anderson, 634 F. Supp. at 1204; Decker Coal, 805 F.2d at 843. A discretionary venue transfer would only shift the inconvenience from defendant to Plaintiff. Anderson, 634 F. Supp. at 1204. Therefore, Bawcom's motion is denied.

**Remaining 12(b)(6) Motions Converted to Motion for Summary Judgment**.

Bawcom moves to dismiss himself as a real party in interest in this dispute and to dismiss certain of Plaintiff's claims as barred by the applicable statute of

20

limitations subject to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon

which relief can be granted.  A Rule 12(b)(6) motion to dismiss does not consider

material outside the complaint.  <u>Levine v. Diamanthuset</u>, 950 F.2d 1478, 1483 (9th

Cir. 1991).  A party who submits matters outside the pleadings to the Court has

notice the court may use them to decide a motion originally noted as a motion to

dismiss, requiring its transformation to a motion for summary judgment.  Fed R.

Civ. P. (12(d); <u>Olsen v. Idaho State Bd. of Med.</u>, 363 F.3d 916, 922 (9th Cir.

2004).   Here, both parties submitted matters outside the complaint showing they

had notice the Court would view the motion as one for summary judgment.   Both

parties had the opportunity to present materials pertinent to the motion[4].   <u>Id</u>.

     Summary judgment is granted when, viewing the evidence in the light most

favorable to the non-moving party, there is "no genuine issue as to any material

fact and that movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  Because a summary judgment terminates a case without trial, courts should

be cautious in granting them.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255

(1986).   This is not to say, however, that granting summary judgment is

disfavored when the Rule 56 standards are met.  <u>Celotex Corp. v. Catrett</u>, 477 U.S.

---

[4]<u>See</u> dkt #36 (Pl.'s Unopposed Mot. for Leave to File Supp. Docs. in Opp'n to Defs.'
Mot. to Dismiss).

317, 327 (1986).

A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.   Anderson, 477 U.S. at 251.

**3.     Questions of material fact exist as to the status of Bawcom as a real party in interest.**

Bawcom claims that Plaintiff contracted with and paid KCCR to build and restore the Camaro.   Aff. Bawcom ¶¶1,2,4,5.   He claims the emails and invoice sent to Plaintiff confirming the sale lists KCCR as the party from whom Plaintiff purchased the Camaro.   (Dkt #27 at 16).   He asserts all payments were made to KCCR's corporate bank account.   Aff. Bawcom ¶6.   Bawcom claims his only involvement was as an officer of KCCR in a representative capacity, and there can be no claim against him individually.   Id. ¶5.   His position is like a house of cards built on legal fiction.

Plaintiff responds that there are issues of material fact regarding whether Bawcom was acting in his individual capacity.   Plaintiff claims throughout the transaction he only communicated with Bawcom and he understood the agreement was with Bawcom individually.  Bawcom never told him he was undertaking a transaction with KCCR.   Plaintiff insists Bawcom directed him to his website, www.katyclassiccars.com and nothing on the website showed affiliation with a

corporation named KCCR.   Pl.'s Am. Compl. ¶16; (see dkt #14-1).  Bawcom

signed all correspondence between the parties, including the invoice, "Rick

Bawcom," never as president or agent of KCCR.   (See dkt #14-3).   While

Bawcom indicated a bank account named KCCR, Inc. and provided a mailing

address for KCCR in an email, Plaintiff argues he never explained what the entity

was or indicated he was acting as KCCR's agent.  Also, in a letter responding to

Plaintiff's attempt to revoke acceptance, Bawcom never indicates KCCR as the

contracting party but refers to himself as the builder of the Camaro.   (Dkt #14-8).

Plaintiff contradicts Bawcom's assertion that the invoice lists KCCR as the

party with whom the Plaintiff contracted as the invoice does not say "KCCR"

anywhere.   (Dkt #14-2).   Bawcom then admitted KCCR is not identified on the

invoice.  (Dkt #39-1).   The invoice does say "Katy Classic Cars and

Restorations," but that assumed business name was not registered with the Texas

Secretary of State until almost three years later, after the lawsuit was served on

Bawcom.   Decl. Jon Wallace ¶3.   As discussed, Bawcom also registered a second

assumed business name and reactivated KCCR as a corporation that same day.   Id.

Plaintiff further reasons that if KCCR is the proper defendant, the

information available with the Texas Secretary of State suggests that this may be a

case where the corporation is simply a shell of Bawcom and the Court should

pierce the corporate veil to impose liability on Bawcom.   (Dkt #38 at 8-12).

Viewed in the light most favorable to Plaintiff, Bawcom's representations raise questions of material fact as to whether Bawcom was acting individually or as a representative of KCCR.   Therefore, Defendants' motion on this issue is denied.

**4.     Questions of fact preclude dismissal based on statute of limitations.**

Bawcom argues Plaintiff's claims for fraud (count 3), constructive fraud (count 4), violation of the Montana Consumer Protection Act (count 5), and conversion (count 7) are all subject to a two-year statute of limitation.   He claims any alleged misrepresentations, warranties, or other acts regarding the rebuild of the Camaro occurred and were reasonably discoverable in 2007.   Therefore, he argues the statute of limitations have run on the above claims because Plaintiff did not file his complaint until March 18, 2010 .   (Dkt #27 at 16).

Plaintiff counters that none of the claims are time barred because they are subject to the discovery rule.   Plaintiff further argues the conversion claim should be subject to the Uniform Commercial Code in Montana which provides for a 3-year statute of limitations.   Mont. Code Ann. § 30-3-122(7); (dkt #29 at 10-11).

**A.     Fraud (count 3), Constructive Fraud (count 4)**

Claims for fraud and constructive fraud are subject to Mont. Code Ann. §

27-3-203; which states:

> "The period prescribed for the commencement of an action for relief on the grounds of fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud..."

See Osterman v. Sears, Roebuck, & Co., 2003 MT 327, ¶¶20.

For purposes of tolling the statute of limitations in an action for fraud, reasonable diligence must be exercised by the aggrieved party in the discovery of the fraud.  Osterman, 2003 MT 327, ¶27.  What constitutes reasonable diligence for the discovery of fraud is a question of fact.  Williams v. DeVinney, 856 P.2d 546, 552 (Mont. 1993).

Plaintiff insists that most of the defects in the Camaro were latent and could only be discovered by an expert such as MacNeish.   (Dkt #15 at 25).   Plaintiff argues he exercised reasonable diligence by taking the Camaro to Blue Ribbon Auto for repairs in June 2008 and subsequently hiring MacNeish to inspect the Camaro.   He argues the earliest he could have been put on notice of the fraud was June 2008.  Id. at 25-26.   Because there is a question of fact as to when the statute of limitations should toll for the counts of fraud and constructive fraud. Defendants' motion is denied at this time.

**B.     Montana Consumer Protection Act (count 5).**

Claims brought under the Montana Consumer Protection Act (Mont. Code Ann. § 30-14-101 et seq.) are subject to the 2-year statute of limitations provided for in Mont. Code Ann. § 27-2-211. <u>Osterman</u>, 2003 MT 327, ¶24. Claims under the Montana Consumer Protection Act are subject to the same discovery analysis as applied to fraud claims. <u>Id</u>. at ¶¶26-27. Because a question of fact exists as to when the statute of limitations should toll, Defendants' motion here is also denied at this time.

### C.    Conversion (count 7)

Bawcom maintains Plaintiff's conversion claim is subject to Mont. Code. Ann. § 27-2-207(2), which provides for a  statute of limitations of 2 years from the commencement of an action for "...taking, detaining, or injuring any goods or chattels, including the specific recovery for any personal property." Claims under section 27-2-207(2) are subject to the discovery rule found at Mont. Code Ann. § 27-2-102(3)(a), (b). <u>Shupak v. New York Life Ins. Co.</u>, 780 F.Supp. 1328, 1336 (D. Mont. 2001). Mont. Code Ann. § 27-2-102(3)(a), (b) states:

> "The period of limitation does not begin on any claim or cause of action against any person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:
>
> (a) the facts constituting the claim are by their nature concealed or self concealing; or

(b) before, during or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause."

A question of fact exists as to when the statute of limitations should toll. Therefore, if the Court determines Plaintiff's conversion claim is subject to section 27-2-207(2), so Defendants' motion here is also denied at this time.

Plaintiff insists his conversion claim is subject to the Uniform Commercial Code in Montana which provides for a 3-year statute of limitations for "an action for conversion of an instrument, for money had and received, or for like action based on conversion." Mont. Code Ann. § 30-3-122(7); (see dkt #29 at 10-11). Plaintiff argues the alleged conversion by Bawcom does not involve goods or chattel but money received from Plaintiff. Plaintiff's first payment was made on March 29, 2007. (See dkt #28-3). Plaintiff filed his claim in this Court on March 18, 2010, within three years of any alleged conversion.[5]

Plaintiff's conversion claim relates to money paid to Bawcom for the purchase of a vehicle. The Uniform Commercial Code (Mont. Code Ann. § 30-3-122(7)) applies. Because Plaintiff filed his claim within three years of the alleged

---

[5]Plaintiff also cites <u>Polar Bear Prod., Inc. v. Timex Corp.</u>, 384 F.3d 700, 720 (9th Cir. 2004), for support. In that case, the Ninth Circuit observes, "the Montana Supreme Court has made clear that '[w]here there is a substantial question as to which of two or more statutes should apply, the general rule is that the doubt should be resolved in favor of the statute containing the longest statute of limitations.'"

conversion, Defendants' motion is denied.

## IV. Conclusion

Personal jurisdiction exists over Defendants in this Court because Montana's long-arm statute establishes jurisdiction over Defendants and the exercise of jurisdiction comports with federal due process.   Venue in this Court is proper under 28 U.S.C. § 1391.   Venue is not transferred under 28 U.S.C. § 1404(a) because such a discretionary venue transfer would only shift any inconvenience from Defendants to Plaintiff.   Anderson v. Thompson, 634 F. Supp. 1201, 1204 (D. Mont. 1986).   Defendants' converted motion for summary judgment, to dismiss Bawcom as a real party in interest, and to dismiss certain of Plaintiff's claims as barred by the applicable statute of limitations is Denied.   A question of material fact exists as to whether Bawcom is a real party in interest. Likewise, a question of material fact exists as to when the statute of limitations should toll for Plaintiff's claims of fraud, constructive fraud, violation of the Montana Consumer Protection Act, and conversion.    The conversion claim is subject to the Uniform Commercial Code in Montana and Plaintiff filed his claim within the applicable 3-year statute of limitations.    Mont. Code Ann. § 30-3-122(7).

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss First

Amended Complaint or in the Alternative Transfer Venue of Defendants (dkt #26)

is DENIED.

Dated this 15th day of September, 2010.


_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT